**DSE, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

No. Civ. A. 98–0620 (SS).

United States District Court, District of Columbia.

April 5, 1998.

Kenneth Allen Martin, Martin & Rylander, P.C., Washington, DC, for DSE, Inc.

Brian J. Sonfield, U.S. Attorney's Office, Washington, DC, for U.S., U.S. Dept. of Army, TOGO West, Secretary of Army, Small Business Admin., AIDA Alvarez.

Michael R. Charness, I, Eric M. Drattell, John G. Horan, McDermott, Will & Emery, Washington, DC, for AMTEC Corp.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Plaintiff's motion for a Preliminary Injunction. Plaintiff, Dae Shin Enterprises, Inc. ("DSE") is an unsuccessful bidder for a contract with the Department of the Army for M550 Escapement Assemblies. DSE challenges the business size determination of the successful bidder, AMTEC Corporation ("AMTEC"), made by the Small Business Administration ("SBA"). The Court concludes that there are several problems with the SBA's size determination in this matter and will remand the case to the SBA for further proceedings.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 16, 1997, the U.S. Army issued Solicitation No. DAAA09–970R00264 (the "Solicitation") for the M550 Escapement Assembly. The Army issued the Solicitation as a small business set aside under the Standard Industrial Classification Code ("SIC") 3483 (See 13 C.F.R. § 121.201), which establishes a small business size standard of 1500 employees. Proposals were due and submitted on November 13, 1997. The Army concluded its proposal evaluations and awarded the contract to AMTEC on January 21, 1998.

AMTEC is a manufacturer of fuses that are used within ammunition. AMTEC's President is Randall Lansing and its Board of Directors consists of Charles L. Palmer (Chairman) and R. David Bergonia. Mr. Palmer is a sophisticated businessperson who acquires small businesses for institutional investors, ensures that they are adequately managed, and later re-sells the businesses for a profit. AMTEC is owned 100% by AMTEC Precision Products, Inc. AMTEC Precision Products has the same Board of Directors as AMTEC Corporation. AMTEC Precision Products is owned by North American Fund II ("Fund II"), a venture capital fund. Mr. Palmer serves as the President of North American Business Development Company, L.L.C., which is the General Partner of Fund II. Mr. Palmer is also involved in two other entities, the North American Company, Ltd., a family owned limited partnership, and the North American Fund III.

Under the terms of the solicitation and 13 C.F.R. § 121.504, a company may self-certify that it qualifies as a small business under the terms of the solicitation. Following this procedure, AMTEC certified that it qualified as a small business at the time it submitted its initial offer on November 12, 1997.

Disappointed bidders on small business set-aside contracts may protest to the contracting officer if they contend that a contract awardee does not meet the criteria for a small business concern. 13 C.F.R. §§ 121.1003, 121.1006. The contracting officer will then forward the protest to the local SBA Government Contracting Area Office. Upon a timely challenge, an SBA area contracting office will issue a "size determination" as to whether the awardee meets the criteria to be a small business concern. 13 C.F.R. § 121.1002. Following this procedure, Plaintiff DSE challenged AMTEC's small business size status in a January 23, 1998 letter written to the Army's Contracting Officer, Mr. James Lonergan. In its letter, DSE alleged the existence of multiple companies affiliated with AMTEC whose employees, when added together, far exceeded the Solicitation's 1500 employee size standard. Mr. Lonergan forwarded DSE'S challenge to the SBA's Office of Government Contracting, Area IV, for its review and determination. Because AMTEC's size was protested, the SBA was required to conduct a review of its size.

In response to the SBA's request, Randall Lansing, AMTEC's President, submitted a completed Form 355 on January 29, 1998. SBA's Form 355 requests a broad range of information from the protested company, including information relating to affiliates and potential affiliates. SBA uses the information from this form to make its size determination.

On February 9, 1998, the SBA Area IV issued its determination that AMTEC quali-

fied as a small business as of the date of its self-certification (November 12, 1997). On February 23, 1998, DSE filed a protest to the General Accounting Office ("GAO"). In its protest, DSE requested a stay of contract performance consistent with 31 U.S.C. § 3553(d). On March 5, 1998, DSE received notice that the GAO failed to notify the Army of DSE's protest, and therefore, the Army directed performance to proceed. On March 11, DSE filed this action for temporary, preliminary, and permanent injunctive relief, and a declaratory judgment. On March 24, 1998, the Court permitted AMTEC Corporation to intervene as a defendant.

On March 27, 1998, the SBA's Office of Government Contracting in Chicago protested the size of AMTEC Corporation. The SBA initiated this protest because it became aware of new information suggesting that AMTEC might have additional affiliates of which SBA was not previously aware. The SBA concluded its second size determination on April 16, 1998, finding that AMTEC had 1369 employees and thus was still qualified as a small business for the solicitation at issue. On April 23, 1998, the Court issued a TRO, restraining any further action on the procurement contract. Beginning on April 27, 1998, the Court held a four-day hearing on Plaintiff DSE's motion for a preliminary injunction.

## II. ANALYSIS AND DECISION

To prevail on a request for a preliminary injunction, the Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) irreparable harm or injury absent an injunction; (3) less harm or injury to the other parties involved; and (4) that it serves the public interest. *See Dendy v. Washington Hosp. Center,* 581 F.2d 990, 992 (D.C.Cir.1978) (footnote omitted); *Washington Metro., Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). The Court concludes that the Plaintiff has proven each of these elements and will issue a preliminary injunction barring further action on the contract.

### A. Substantial Likelihood of Success on the Merits

#### 1. Standard of Review for SBA's Size Determination

The standard of review for the SBA's size determination is provided in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2) (1998):

> [T]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
>
> (D) without observance of procedure required by law;
>
> (E) unsupported by substantial evidence in a case subject to 5 U.S.C. §§ 556 and 557 or otherwise reviewed on the record of an agency hearing provided by statute;
>
> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In reviewing the SBA's determination, the Court is not empowered to "substitute its judgment" for the SBA's decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). Nevertheless, the Court is required to give the SBA's decision "a thorough, probing, in-depth review." *Id.* at 415, 91 S.Ct. 814.

The SBA's decision is "arbitrary," "capricious," or contrary to law within the meaning of § 706(2)(A) if the SBA has entirely failed to consider an important aspect of the problem or has offered an explanation for its decision that runs counter to the evidence before it. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (D.C. Cir.1981).

### 2. Application of the Standard of Review

In this case, the SBA made two separate size determinations. It is conceded by the SBA that the first size determination was inadequate because AMTEC did not make the proper disclosures. The SBA claims that its first determination is not arbitrary and capricious or contrary to law because any error in its first determination was caused by the failure of AMTEC to disclose the pertinent information, not by any neglect on its part. However, if an agency "entirely fail[s] to consider an important aspect of the problem" its determination is arbitrary and capricious. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (D.C. Cir.1983). The fact that the failure to consider relevant information was not the fault of the agency does not prevent it from being arbitrary and capricious or contrary to law.

The second size determination was made in direct response to this lawsuit. Plaintiff argues that the SBA's second size determination amounts to an advisory opinion, and as such, should not be considered in this case. Plaintiff bases its argument on 13 C.F.R. § 121.403, which provides that "Formal size determination and SIC code designations made by authorized SBA officials are binding upon the parties. Opinions otherwise provided by SBA officials to contracting officers or others are advisory in nature, and are not binding or appealable." The Court finds that the SBA regulations do not preclude the SBA from revisiting its determination when it discovers that there is relevant information that was not disclosed when it made its initial size determination. The regulation Plaintiff cites merely suggests that formal size determinations are binding as opposed to informal opinions, advice, or comments made by SBA officials. It does not suggest that the SBA can only issue one size determination which it cannot revisit or amend in the face of additional information. Indeed, in this case, the SBA made a second size determination in response to Plaintiff's allegations in its complaint in this case. To preclude an agency from revisiting an issue in order to correct a previously erroneous decision would unduly hamstring an agency in discharging its mission to further the public interest. Accordingly, the Court will focus on the issue of whether the second size determination was arbitrary and capricious or contrary to law.

Plaintiff argues that the SBA failed to adhere to the requirements of the Small Business Act, 15 U.S.C. § 631, *et. seq.*, and 13 C.F.R. § 121.106, which impose on the SBA the obligation to consider all individuals employed by a company and its affiliates. The Plaintiff claims that the SBA neglected to consider all the affiliated companies of AMTEC.

In determining an organization's size under the SBA regulations, the SBA will count the employees of all of the affiliates of an organization. 13 C.F.R. § 121.103(a)(4). An organization has an affiliate if the organization "controls or has the power to control the other or a third party or parties controls or has the power to control both." 13 C.F.R. § 121.103(a)(4). To determine if organizations are affiliates of each other, the SBA considers the following factors: ownership, previous relationships with or ties to another concern, and contractual relationships. 13 C.F.R. § 121.103(a)(2).

In this case, AMTEC concedes that it did not disclose all the relevant information for the SBA to make its first size determination. Plaintiff argues that the SBA's second size determination was arbitrary and capricious because the agency should have applied the "negative inference rule" and interpreted all information not disclosed the first time contrary to AMTEC's status as a small business. The negative inference rule is provided in 13 C.F.R. § 121.1008 and § 121.1009. According to § 121.1008(d),

> If a concern does not submit a completed SBA Form 355, answers to the protest allegations, or other requested information with the allotted time provided by SBA, or if it submits incomplete information, SBA *may* presume that disclosure of the form, any information missing from it, or other missing information would show or tend to show that the concern is other than a small business (emphasis added).

Section 121.1009(d) provides that "[i]n the case of refusal or failure to furnish requested

information with a required time period, SBA *may* assume that disclosure would be contrary to the interests of the party failing to make disclosure" (emphasis added). As indicated by the word "may" in each of these regulations, the negative inference rule is discretionary, not mandatory. Ms. Elizabeth Craig, the size determination specialist who made both size determinations in this case, testified that the SBA does not apply the negative inference rule in an inflexible and rigid manner. Typically, the SBA applies the negative inference rule when it requests specific information and the concern fails to supply it. Because Form 355 is complicated and there are many gray areas, the SBA generally does not resort to the negative inference rule except in egregious instances. Often, when a Form 355 is incomplete, the SBA will request the additional information and afford the concern an opportunity to provide the information before applying the negative inference rule.

Plaintiff alleges that AMTEC intentionally failed to disclose relevant information on its Form 355, which was used in the SBA's size determinations. In this case, the Court finds no evidence of intentional or wilful nondisclosure by AMTEC. Absent such evidence, it is reasonable for the SBA to exercise its discretion in not applying the negative inference rule.

While the Court finds that there is no evidence to support an intentional or fraudulent nondisclosure, the evidence does suggest that AMTEC was not careful in the way it was making its submissions to the SBA. Mr. Lansing testified that he self-certified by checking the box for small business. He said that he was a novice in dealing with Form 355 and that he had trouble figuring out what information had to be included on the form. Throughout this process, Mr. Lansing acted alone, without much guidance from Mr. Palmer or AMTEC's other director, Mr. Bergonia. Despite the fact that Mr. Lansing knew that AMTEC was owned by AMTEC Precision Products, which in turn was owned by a venture capital fund (Fund II), he did not consult with counsel or with Mr. Palmer or Mr. Bergonia before certifying that AMTEC was a small business. In an area governed by complex regulations, this was not the prudent course to follow.

It is clear that the business structure of Mr. Palmer's companies was too decentralized and that there was inadequate communication between Mr. Palmer and AMTEC. When responding to Form 355, Mr. Lansing listed as affiliates only those companies immediately affiliated with AMTEC (its sister companies that were held by AMTEC Precision Products, Inc.). He did not know about the other companies Mr. Palmer owned. Despite the fact that Mr. Lansing was President of AMTEC and Mr. Palmer was on the Board of Directors of AMTEC and its parent, Precision Products, Inc., Mr. Palmer testified that he never met Mr. Lansing until the preliminary injunction hearing. Mr. Palmer was not aware that Mr. Lansing was seeking the government contract for AMTEC. When Mr. Lansing negotiated an acquisition of the assets of Allied Molding Co., Mr. Palmer was not involved. In short, Mr. Palmer did not know what Mr. Lansing was doing and Mr. Lansing did not know what Mr. Palmer was doing. The Court finds that it was this loose style of oversight and lack of communication that resulted in AMTEC's failure to provide adequate disclosure on its Form 355 for the first size determination. If AMTEC desires to continue pursuing government contracts as a small business, Mr. Palmer's group of companies must devise a better system of communication among the entities Mr. Palmer owns, manages, or controls.

Because of the organizational deficiencies of the Palmer entities, the Court lacks confidence in the SBA's second size determination. The SBA's ability to conduct an accurate size determination depends, in large part, on an applicant's voluntary disclosures. Ms. Craig testified that the SBA rarely looks beyond the disclosures made by the alleged small business concern. Given the lack of communication between AMTEC and the Board of Directors of its parent company, the Court has serious questions about whether AMTEC made all the relevant disclosures for the second size determination.

■ At the preliminary injunction hearing, the Court learned of relevant information that AMTEC failed to disclose to the SBA even for the second size determination. Spe-

cifically, AMTEC did not make adequate disclosures concerning several asset acquisitions that Mr. Lansing and Mr. Palmer negotiated during the period of self-certification.

The first asset acquisition was of Actown–Electrocoil and AEIC, Inc. by Mr. Palmer's North American Fund III. This acquisition was pursued by Mr. Palmer. Mr. Lansing, the President of AMTEC, had no knowledge of this acquisition. In connection with the acquisition, a letter of intent was signed on October 21, 1997, about 20 days before AMTEC self-certified that it was a small business. The final agreement for this asset acquisition was signed on January 13, 1998. AMTEC concedes that this acquisition would add approximately 200 to 250 employees for the purposes of its size status and would put it over the 1500 employee limit.

The second asset acquisition, in which AMTEC purchased the assets of Allied Molding Co., was negotiated by Mr. Lansing. Mr. Palmer had no knowledge of the details of this acquisition. A letter of intent was drafted on November 14, 1997 and signed on November 17, 1997, a few days after the date AMTEC self-certified that it was a small business. The final agreement was signed on December 30, 1997. AMTEC stated that the acquisition of Allied Molding Co. would add approximately 70 employees.

AMTEC alleges that because these acquisitions were finally consummated after the size certification date, November 12, 1997, there was no need to disclose information or documents pertaining to these acquisitions. Even though the SBA, at the time it made its second size determination, had not been provided information concerning the letters of intent, its position at the hearing was that the acquisitions were irrelevant to its determination because they were not finalized until after the self-certification date:

> The agreements with AEIC, Inc. and Actown–Electrocoil, Inc. are exactly the type of agreements SBA would give present effect to if they had been entered into prior to the relevant date. However, in this instance, the agreements did not come into existence until approximately six weeks *after* the relevant date of November 12, 1997. Therefore, SBA does not consider AEIC, Inc. (the Illinois corporation) and Actown–Electrocoil, Inc. (the Illinois cor-

poration) to have been affiliates of Charles L. Palmer, any of the North American entities, or AMTEC on the relevant date of November 12, 1997. . . .

> Similarly, Allied Molded Products, Inc. entered into an agreement to be purchased by AMTEC Corporation on December 30, 1997, which is also after the relevant date of November 12, 1997. For the same reasons as cited in the previous paragraphs concerning AEIC, Inc. and Actown Electrocoil, Inc., Allied Molded Products, Inc. is also not considered to have been an affiliate of Charles L. Palmer, any of the North American entities, or AMTEC on the relevant date of November 12, 1997. *SBA's Size Determination Memorandum,* April 16, 1998, at 6–7.

The Court finds that the SBA's decision regarding these two acquisitions in its second size determination is arbitrary and capricious and contrary to law because the SBA failed to examine whether an agreement in principle existed as of the size certification date. In making this conclusion, the Court is not second-guessing the SBA's view of the facts. Rather, the SBA's second size determination is inadequate because it did not have all the necessary information before it when it made the determination. According to the SBA regulations, if a concern had an "agreement in principle" to conduct transactions on or before the date of self-certification, then the company should be included as an affiliate. 13 C.F.R. § 121.103(d) provides that

> . Since stock options, convertible debentures, and agreements to merge (including agreements in principle) affect the power to control a concern, SBA treats them as though the rights granted have been exercised .... SBA gives present effect to an agreement to merge or sell stock whether such agreement is unconditional, conditional, or finalized but unexecuted. Agreements to open or continue negotiations towards the possibility of a merger or a sale of stock at some later date are not considered 'agreements in principle' and, thus, are not given present effect.

AMTEC chose not to provide the letters of intent because it assumed that the two acquisitions were not relevant to the SBA in conducting its size determination since they occurred after the self-certification date.

AMTEC failed to disclose information pertaining to the issue of whether there may have been an agreement in principle as of November 12, 1997. AMTEC did not disclose this information because it relied upon its own interpretations of the SBA regulations and concluded that there were no agreements in principle before the self-certification date. However, this is a complicated issue that the SBA must determine. The SBA cannot merely rely upon AMTEC's conclusion about this issue. In order for the SBA to make its determination, it must have all of the pertinent information about the acquisitions. Accordingly, the Court will remand this matter to the SBA to make a size determination considering all the evidence on the subject. Because of the sloppy way that AMTEC has handled this matter, it would seem that the best method to determine the number of its employees of the Palmer complex is to require a certified count from the company's independent accounting firm.

■ The Court further finds that the SBA failed to examine whether the asset acquisitions should have been included in the SBA's second size determination notwithstanding the fact that they were finalized after the self-certification date. The SBA claims that it did not have the discretion to consider this issue because its regulation restricts its analysis to the self-certification date. Pursuant to 13 C.F.R. § 121.404, "Generally, SBA determines the size status of a concern (including its affiliates) as of the date the concern submits a written self-certification that it is small to the procuring agency as part of its initial offer including price. The following are two exceptions ...." The regulation goes on to state two exceptions which are not

applicable in this case. The SBA claims that its regulation should be interpreted to deny the SBA any discretion to look beyond the date of self-certification. The SBA states that the only two exceptions to this rule are the ones enumerated in the regulation.

■ Courts are to review an agency's interpretation of its own regulation with deference. *See Jersey Shore Broadcasting Corp. v. Federal Communications Comm'n*, 37 F.3d 1531, 1536 (D.C.Cir.1994) ("When an agency interprets its own administrative regulation promulgated under the statute charged to its administration, [a] court owes a high degree of deference."). "The agency's interpretation should be upheld unless it is 'plainly erroneous or inconsistent with the regulation.'" *Id.* (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

The Court finds that the SBA's interpretation is inconsistent with its regulation. The language of the regulation by its own terms indicates that the SBA does have the discretion to consider transactions consummated after the date of self-certification. While some regulations are ambiguous or vague, this one is written quite clearly. It could easily have been written in the way that the SBA claims it should be interpreted by eliminating the word "generally" and specifying that the two exceptions are the only exceptions. In short, the clear language of the SBA's regulation affords it much more flexibility than it believed it possessed when it made the size determinations in this case.[1] Because the SBA relied upon this erroneous interpretation of 13 C.F.R. § 121.404, it failed to consider the issue of whether this case should be an instance where the SBA looks beyond the date of self-certification.[2]

---

1. Agencies acting in the public interest must have flexibility if they are to carry out their responsibilities fairly and effectively. This case illustrates that if the SBA limits its discretion so that it cannot, under any circumstances, consider mergers or acquisitions after the self-certification date, the SBA can defeat the very purpose of its existence. The SBA's purpose is to further the interests of small businesses. Without the flexibility to look beyond the date of self-certification in special cases, companies can secure contracts set aside for small businesses while simultaneously planning to "bulk up" shortly after obtaining the contract. For example, under the proposed interpretation offered by the SBA, even

if AMTEC were acquired by General Motors soon after the self-certification date, the SBA would allow this new "big business" to keep the contract. If the SBA were incapable of preventing such an abuse in promoting small business, then the rationale for the SBA's continued existence certainly would be in question.

2. This Court's interpretation should not be taken as an implicit finding that the acquisitions in question do not meet the criteria for inclusion as an agreement in principle under 13 C.F.R. § 121.103(d). This can only be determined after a full review by the SBA of all the circumstances surrounding the acquisitions. Even though the

### B. Irreparable Harm

 The Court finds that the Plaintiff will be irreparably harmed if AMTEC and the U.S. Army are permitted to engage in further action on the procurement contract. "A disappointed bidder that claims illegality in a procurement alleges an injury beyond its economic loss of the contract. The disappointed bidder may also claim injury to its right to a legally valid procurement process." *National Maritime Union of America v. Commander, Military Sealift Command,* 824 F.2d 1228, 1237 (D.C.Cir.1987).

### C. Harm to Other Parties

While AMTEC and the U.S. Army will suffer some detriment because they will not be able to act immediately on the contract, the delay necessary for the SBA to carry out this Court's order on remand will not be substantial.

### D. Public Interest

The Court finds that the public interest favors the issuance of a preliminary injunction. The public has an interest in the fair and equitable administration of the federal procurement system.[3]

An appropriate order accompanies this Memorandum Opinion.

### *ORDER AND INJUNCTION*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that this matter be **RE-MANDED** to the Small Business Administration ("SBA") to address the issues raised in the Court's Memorandum Opinion. Specifically, the SBA shall consider the evidence brought forward at the preliminary hearing in this case; and it is further

**ORDERED** that good cause having been shown pursuant to Rule 65 of the Federal Rules of Civil Procedure that immediate and irreparable injury and damage will result to Plaintiff before the SBA can carry out the Court's order on remand, that Plaintiff's Motion for a Preliminary Injunction is **GRANTED**; and it is further

**ORDERED** that the Federal Defendants, their officers, agents, servants, employees, and attorneys and those persons in active concert or participation with them who receive actual notice of the Order by personal service or otherwise, shall be **PRELIMINARILY ENJOINED** from engaging in any expenditure of funds and any other action in furtherance of its contract with AMTEC Corporation for M550 Escapement Assemblies; and it is further

**ORDERED** that no compensation is due to AMTEC Corporation for any delay in the beginning of performance in the procurement contract because of the Court's finding that the delay in this matter is the fault of AMTEC's inadequate disclosures; and it is further

**ORDERED** that Plaintiff enter a bond in the amount of $5000, which shall cover the costs of delaying performance on the contract. The Court finds that $5000 is an appropriate amount because Plaintiff is a small company with modest revenues; and it is further

**ORDERED** that unless good cause is shown within 10 days by either party, this injunction shall become permanent with the Court retaining jurisdiction to issue such other and further orders as may be deemed necessary to effectuate the terms of this Order.

---

final agreements were not signed until after the self-certification date, the letters of intent themselves may well be found to be agreements in principle. The so-called "walk-away no liability clause" paragraph of the letters of intent is not a sole controlling factor in this determination.

**3.** This Court wants to reiterate that this is not a case about dishonesty or fraud. From what this Court observed at the hearing, Charles Palmer appears to be an honorable and capable businessman. What this case illustrates is the need for better management and communication where far-flung decentralized organizations attempt to take advantage of highly regulated government entitlement programs. Clearly, one lesson learned from this experience is the need for such organizations, at the earliest possible time, to seek the advice of knowledgeable lawyers and accountants.